| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Ronald R. Cohn (SBN 60836)<br>Horgan, Rosen, Beckham & Coren, LLP<br>23975 Park Sorrento, Suite 200<br>Calabasas, California 91302<br>Telephone: 818.591.2121<br>Facsimile: 818.591.3838<br>email: rcohn@horganrosen.com<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| In re:<br><br>MARC JOSEPH SPIZZIRRI<br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 8:13-bk-14702-MW<br>CHAPTER: 11<br><br>**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (WITH SUPPORTING DECLARATIONS) REGARDING REAL PROPERTY**<br><br>DATE: 11/25/2013<br>TIME: 9:00 am<br>COURTROOM: 6C, 411 West Fourth St, Santa Ana, CA |
|---|---|

**Movant:**  FIRST REPUBLIC BANK

**Movant is the (*check one*):**
☒ Holder of deed of trust
☐ Assignee of holder of deed of trust
☐ Servicing agent for holder of deed of trust or assignee of holder of deed of trust

1.  NOTICE IS HEREBY GIVEN to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the above date and time and in the stated courtroom, Movant in the above-captioned matter will move this court for an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

2.  **Hearing Location:**
☐ 255 East Temple Street, Los Angeles, CA 90012        ☒ 411 West Fourth Street, Santa Ana, CA 92701
☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367        ☐ 1415 State Street, Santa Barbara, CA 93101
☐ 3420 Twelfth Street, Riverside, CA 92501

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

3.   a.   ☒   This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1.  If you wish to oppose this motion, you must file a written response to this motion with the court and serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing of this motion.

     b.   ☐   This motion is being heard on SHORTENED NOTICE.  If you wish to oppose this motion, you must appear at the hearing.  Any written response or evidence may be filed and served:

               ☐ at the hearing     ☐ at least _____ days before the hearing.

          (1)  ☐   A Motion for Order Shortening Time was not required according to the calendaring procedures of the assigned judge.

          (2)  ☐   A Motion for Order Shortening Time was filed pursuant to LBR 9075-1(b) and was granted by the court, and such motion and order have been or are being served upon the Debtor and trustee, if any.

          (3)  ☐   A Motion for Order Shortening Time has been filed and is pending.  Once the court has ruled on that motion, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion, if any.

4.   You may contact the clerk's office to obtain a copy of an approved court form for use in preparing your response (*optional LBR form F 4001-1.RESPONSE*), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

5.   If you fail to file a written response to the motion, if required, or fail to appear at the hearing, the court may treat such failure as a waiver of your right to oppose the motion and may grant the requested relief.

Date:  10/31/2013

_____
Horgan, Rosen, Beckham & Coren, LLP
Printed name of law firm (if applicable)

_____
Ronald R. Cohn
Printed name of individual Movant or attorney for Movant

*Ronald R. Cohn*
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2012                               Page 2                               F 4001-1.RFS.RP.MOTION

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

1. **The Property at Issue:** Movant moves for relief from the automatic stay with respect to following real property (Property):

        Street address: Lot 8 Kalihiwai Road, D
        Unit/suite no.:
        City, state, zip code: Kilauea, HI 96754

        Legal description or document recording number (including county of recording):

    ☒ See attached continuation page.

2. **Case History:**

    a.  ☒ A voluntary petition  ☐ An involuntary petition
        under chapter  ☐ 7  ☒ 11  ☐ 12  ☐ 13 was filed on (*specify date*): _05/30/2013_____

    b.  ☐ An Order of Conversion to chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13
        was entered on (*specify date*): _____

    c.  ☐ Plan, if any, was confirmed on (*specify date*): _____

    d.  ☐ Other bankruptcy cases affecting this Property were pending within the past two years. See attached declaration.

3. **Grounds for Relief from Stay:**

    a.  ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:

        (1) ☒ Movant's interest in the Property is not adequately protected.

            (a) ☐ Movant's interest in the collateral is not protected by an adequate equity cushion.

            (b) ☒ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

            (c) ☐ No proof of insurance re Movant's collateral has been provided to Movant, despite borrower's obligation to insure the collateral under the terms of Movant's contract with Debtor.

            (d) ☐ Payments have not been made as required by an Adequate Protection Order previously granted to Movant.

        (2) ☐ The bankruptcy case was filed in bad faith to delay, hinder, and defraud Movant.

            (a) ☐ Movant is the only creditor or one of very few creditors listed on the Debtor's master mailing matrix.

            (b) ☐ Non-individual entity was created just prior to bankruptcy filing for the sole purpose of filing bankruptcy.

            (c) ☐ The Debtor filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the petition and a few other documents. No other Schedules or Statement of Financial Affairs (or chapter 13 Plan, if appropriate) have been filed.

            (d) ☐ Other (*see attached continuation page*).

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2012                       Page 3                      **F 4001-1.RFS.RP.MOTION**

(3) ☐ *(Chapter 12 or 13 cases only)*

    (a) ☐ Postconfirmation plan payments have not been made to the standing trustee.

    (b) ☐ Postpetition payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor has no equity in the Property, and pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), Debtor has failed within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), Debtor's filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy filings affecting the Property.

4. ☐ Movant also seeks annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached declaration(s).

5. **Evidence in Support of Motion: (Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)**

a. ☒ Movant submits the attached declaration(s) on the court's approved forms (*if applicable*) to provide evidence in support of this motion pursuant to the LBR.

b. ☒ Other declaration(s) are also attached in support of this motion.

c. ☒ Movant requests that the court consider as admissions the statements made by Debtor under penalty of perjury concerning Movant's claims and the Property set forth in Debtor's schedules. Authenticated copies of the relevant portions of the schedules are attached as Exhibit _"1"_.

d. ☐ Other evidence (*specify*): _____

6. ☐ An optional Memorandum of Points and Authorities is attached to this motion.

**WHEREFORE, Movant prays that the court issue an Order terminating or modifying the stay and granting the following (*specify forms of relief requested*):**

1. Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2. **Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor via telephone or written correspondence to offer such an agreement. Any such agreement shall be nonrecourse unless stated in a reaffirmation agreement.**

3. ☐ Annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached declaration(s).

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4. ☒  Additional provisions requested:
   a.  ☒  That the 14-day stay described by FRBP 4001(a)(3) is waived.
   b.  ☐  That Extraordinary Relief be granted as set forth in the Attachment (*attach optional LBR Form F 4001-1.EXT.RELIEF.ATTACH*).
   c.  ☐  For other relief requested, see attached continuation page.

5.  If relief from stay is not granted, Movant respectfully requests the court to order adequate protection.

Date:  10/31/2013                              Respectfully submitted,

                                              First Republic Bank
                                              Printed name of Movant

                                              Ronald R. Cohn
                                              Printed name of attorney for Movant (if applicable)

                                              Signature

                                              Printed name of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# REAL PROPERTY DECLARATION

I, __Linda K. Rohde_____, declare as follows

*(Print Name of Declarant)*

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

    ☐  I am the Movant and owner of the Property.

    ☐  I manage the Property as the authorized agent for the Movant.

    ☒  I am employed by Movant as (*state title and capacity*): __Manager, Special Assets_____

    ☐  Other (*specify*): _____

2.  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

3.  The Movant is:

    ☒  Original holder of the beneficial interest in the Property. A true and correct copy of a recorded proof of this interest is attached hereto as Exhibit __"2"__ (*e.g., deed of trust*).

    ☐  Assignee of the original holder of the beneficial interest in the Property. A true and correct copy of recorded proof of this interest is attached hereto as Exhibit _____ (*e.g., allonge, assignment, et.al.*).

    ☐  Servicing or subservicing agent pursuant to a servicing agreement or other documented authorization to act as Movant for the owner of the beneficial interest. Attached hereto as Exhibit _____ is a true and correct copy of the relevant part of the document which reflects authority to act as Movant for the owner of the beneficial interest.

4.  a.  The address of the Property that is the subject of this Motion is:

        Street address: __Lot 8 Kalihiwai Road_____
        Unit/suite no.: __D_____
        City, state, zip code: __Kilauea, HI 96754_____

    b.  The legal description or document recording number (including county of recording) set forth in Movant's deed of trust is attached as Exhibit __"3"__.

    ☒  See attached page.

5.  Type of property (*check all applicable boxes*):

    a. ☐  Debtor's principal residence          b. ☒  Other single family residence
    c. ☐  Multi-unit residential               d. ☐  Commercial
    e. ☐  Industrial                           f. ☐  Vacant land
    g. ☐  Other (*specify*): _____

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2012                          Page 6                          **F 4001-1.RFS.RP.MOTION**

6. Nature of Debtor's interest in the Property:

a. ☒ Sole owner

b. ☐ Co-owner(s) *(specify)*:

c. ☐ Lien holder *(specify)*:

d. ☒ Other *(specify)*: Trustee of Spizzirri Family Trust

e. ☒ Debtor   ☒ did   ☐ did not   list the Property in the schedules filed in this case.

f. ☒ Debtor acquired the interest in the Property by   ☒ grant deed   ☐ quitclaim deed   ☐ trust deed

   The deed was recorded on: __02/28/2003__

7. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ 2,000,000.00 | $ 2,000,000.00 | $ 2,000,000.00 |
| b. | Accrued interest: | $ 52,083.35 | $ 46,875.01 | $ 98,958.36 |
| c. | Late charges | $ 7,416.67 | $ 3,125.00 | $ 10,541.67 |
| d. | Costs (attorney's fees, other costs): | $ 1,601.53 | $ 16,876.32 | $ 18,477.85 |
| e. | Advances (property taxes, insurance): | $ 66,165.60 | $ 0.00 | $ 66,165.60 |
| f. | Less suspense account or partial balance paid: | $[ 0.00    ] | $[ 0.00    ] | $[0.00    ] |
| g. | TOTAL CLAIM as of: 10/14/2013 | $ 2,127,267.15 | $ 2,066,876.33 | $ 2,194,143.48 |

h. ☐ Loan is all due and payable because it matured on *(specify date)*: _____

8. Movant holds a   ☒ deed of trust   ☐ judgment lien   ☐ other *(specify)* _____
   that encumbers the Property.

a. A true and correct copy of the document as recorded is attached as Exhibit _"2"_.

b. A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached
   as Exhibit _"4"_.

c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
   trust to Movant is attached as Exhibit _____.

9. Status of Movant's foreclosure actions relating to the Property *(fill the date or check the box confirming no such action
   has occurred)*:  Complaint to foreclose mortgage filed in State of Hawaii.

a. Notice of default recorded on the following date: _____ or none recorded ☒

b. Foreclosure sale originally scheduled for the following date: _____ or none scheduled ☒

c. Foreclosure sale currently scheduled for the following date: _____ or none scheduled ☒

d. Foreclosure sale already held on the following date: _____ or none held ☒

e. Trustee's deed on sale already recorded on the following date: _____ or none recorded ☒

10. Attached *(optional)* hereto as Exhibit _"5"_ is a true and correct copy of a POSTPETITION statement of account that
    accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the
    petition date.

11. ☒ (chapter 7 and 11 cases only):
    Status of Movant's loan:

a. Amount of current monthly payment: $ _15,508.81_____ for the month of _February_____ 20_13_.

b. Number of payments that have come due and were not made: _9___. Total amount: $_139,579.29_____

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

c.  Future payments due by time of anticipated hearing date (*if applicable*):

An additional payment of $ 15,508.81_____ will come due on _11/01/2013_____ , and on the _1st__ day of each month thereafter. If the payment is not received within _10__ days of said due date, a late charge of $ 625.00_____ will be charged to the loan.

d.  The fair market value of the entire Property is $4,200,000.00_____ , established by:

☐  Appraiser's declaration with appraisal is attached herewith as Exhibit _____.

☐  A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

☒  A true and correct copy of relevant portion(s) of Debtor's schedules is attached as Exhibit _"1"__.

☐  Other (*specify*): _____

e.  **Calculation of equity in Property:**

Based upon ☒ preliminary title report   ☒ Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | First Republic Bank | $2,000,000.00 | $2,163,740.60 |
| 2nd deed of trust: | Bancentre Corp. | $1,800,000.00 | |
| 3rd deed of trust: | | | |
| Judgment liens: | | | |
| Taxes: | | | |
| Other: | 10% costs of sale | | $420,000.00 |

**TOTAL DEBT:** $ 4,383,740.60

f.  Evidence establishing the existence of the above deed(s) of trust and lien(s) is attached as Exhibit _"1"·__ and consists of:

☐  Preliminary title report

☒  Relevant portions of Debtor's schedules as filed in this case

☐  Other (*specify*): _____

g.  Subtracting the deed(s) of trust and other lien(s) set forth above from the value of the Property as set forth in Paragraph 11d above, the Debtor's equity in the Property is $ 236,259.40_____ (§ 362(d)(2)(A)).

h.  The value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant is $ 2,036,259.40_____ (§ 362(d)(1)).

i.  Estimated costs of sale: $ 420,000.00_____ (estimate based upon _10_____% of estimated gross sales price)

j.  The fair market value of the Property is declining based on or due to:
__Failure of debtor to pay property taxes and maintenance._____
_____

12. ☐  (Chapter 12 and 13 cases only)

Chapter 12 or 13 case status information:

a.  A 341(a) meeting is currently scheduled for (*or concluded on*) the following date: _____
Confirmation hearing currently scheduled for (or concluded on) the following date:_____
Plan was confirmed on the following date (*if applicable*): _____

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*                          Page 8                          **F 4001-1.RFS.RP.MOTION**

b.  Postpetition payments due BUT REMAINING UNPAID since the filing of the case:

| (Number of) | payment(s) due at | $ | | Each = | $ |
|---|---|---|---|---|---|
| (Number of) | payment(s) due at | $ | | Each = | $ |
| (Number of) | payment(s) due at | $ | | Each = | $ |
| (Number of) | payment(s) due at | $ | | Each = | $ |
| (Number of) | late charges at | $ | | Each = | $ |
| (Number of) | late charges at | $ | | Each = | $ |
| (Number of) | late charges at | $ | | Each = | $ |
| (Number of) | late charges at | $ | | Each = | $ |

(*See attachment for additional breakdown or information attached as Exhibit _____.*)

c.  Postpetition advances or other charges due but unpaid:                               $
(*See attachment for details of type and amount attached as Exhibit _____.*)

d.  Attorneys' fees and costs                                                                       $
(*See attachment for details of type and amount attached as Exhibit _____.*)

e.  Less suspense account or partial paid balance                                  $[                    ]

TOTAL POSTPETITION DELINQUENCY:                              $

f.  Future payments due by time of anticipated hearing date (*if applicable*): _____
An additional payment of $_____ will come due on _____, and on
the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late
charge of $_____ will be charged to the loan.

g.  Amount and date of the last 3 postpetition payments received in good funds, regardless of how applied, from the
Debtor, if applicable:

$ _____ received on _____
$ _____ received on _____
$ _____ received on _____

h.  ☐  The claim is provided for in the chapter 12 or 13 Plan. Plan payment history is attached as Exhibit _____.

i.  ☐  See attached declaration(s) of chapter 12 or 13 Trustee regarding receipt of payments under the plan (*attach
LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

13. ☐  Movant has not been provided with evidence that the Property is currently insured, as required under the terms of
the loan.

14. ☐  The court determined on _____ that the Property qualifies as "single asset real estate" as defined in
11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the petition, more than 30 days have
passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed
a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the
Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐  See attached continuation page for facts establishing that the bankruptcy case was filed in bad faith to delay,
hinder, and or defraud Movant.

16. ☐  The filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved:

a.  ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or
court approval. See attached continuation page for facts establishing the scheme.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 9                              **F 4001-1.RFS.RP.MOTION**

b. ☐ Multiple bankruptcy filings affecting the Property. The multiple bankruptcy filings include the following cases:

1. Case name:                          Chapter:
   Case number:                        Date dismissed:                    Date discharged:
   Date filed:
   Relief from stay re this Property ☐ was ☐ was not granted.

2. Case name:                          Chapter:
   Case number:                        Date dismissed:                    Date discharged:
   Date filed:
   Relief from stay re this Property ☐ was ☐ was not granted.

3. Case name:                          Chapter:
   Case number:                        Date dismissed:                    Date discharged:
   Date filed:
   Relief from stay re this Property ☐ was ☐ was not granted.

☐ See attached continuation page for more information about other bankruptcy cases affecting the Property.

☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

17. ☐ Movant seeks annulment of the automatic stay so that the filing of the bankruptcy petition does not affect any and all of the enforcement actions set forth in paragraph 8 above that were taken after the filing of the bankruptcy petition in this case.

a. ☐ These actions were taken by Movant without knowledge of the bankruptcy filing, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Although Movant knew about the bankruptcy filing, Movant had previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting this Property as set forth in Exhibit _____ attached hereto.

c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


__10/22/2013__          ___Linda K. Rohde_____          _____
Date                         Printed name                                    Signature

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2012                              Page 10                              F 4001-1.RFS.RP.MOTION

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Horgan, Rosen, Beckham & Coren, LLP
23975 Park Sorrento, Suite 200, Calabasas, California 91302

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (WITH SUPPORTING DECLARATIONS) REGARDING REAL PROPERTY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) _10-31-13_, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (date) _10-31-13_, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| _10/31/2013_ | RACHEL RUELAS | /S/ RACHEL RUELAS |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Case Number: 8:13-bk-14702-MW

Category 1 Addressees:

- Dan E Chambers    dchambers@clfca.com
- Ronald R Cohn    rcohn@horganrosen.com
- Caroline Djang    cdjang@rutan.com
- Nichole Glowin    nglowin@wrightlegal.net, bkgroup@wrightlegal.net
- Robert P Goe    kmurphy@goeforlaw.com,
  rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Nancy S Goldenberg    nancy.goldenberg@usdoj.gov
- Brian T Harvey    bharvey@buchalter.com,
  IFS_filing@buchalter.com;rreeder@buchalter.com
- Stephen E Hyam    shyam@clarktrev.com
- John Mark Jennings    jjennings@shbllp.com
- Elizabeth A Lossing    elizabeth.lossing@usdoj.gov
- Mike D Neue    mneue@lntlaw.com, jokeefe@lntlaw.com;nlockwood@lntlaw.com
- Robert E Opera    ropera@winthropcouchot.com,
  pj@winthropcouchot.com;vcorbin@winthropcouchot.com;jstuhlmiller@winthropcouchot.com
- Eric S Pezold    epezold@swlaw.com, dwlewis@swlaw.com
- Brett Ramsaur    bramsaur@swlaw.com, kcollins@swlaw.com
- Todd C. Ringstad    becky@ringstadlaw.com
- Leonard M Shulman    lshulman@shbllp.com
- Scott O Smith    ssmith@buchalter.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Michael J. Weiland    mweiland@wgllp.com, lfisk@wgllp.com


Category 2 Addressee: (Via U.S. Mail)

Debtor:
Marc Joseph Spizzirri
30721 Hunt Club Drive
San Juan Capistrano, CA 92675

U.S. Trustee:
United States Trustee (SA)
411 W Fourth St., Suite 9041
Santa Ana, CA 92701-4593

Other Addressee:
Joshua M. Wolff
Wolff Law Corp.
9160 Irvine Center Drive, Suite 200
Irvine, CA 92618

Case Number: 8:13-bk-14702-MW

Judge
Hon. Mark S. Wallace, United States Bankruptcy Judge
U.S. Bankruptcy Court
Ronald Reagan Federal Building
SANTA ANA DIVISION
411 W. Fourth Street, Suite 6135
Santa Ana, CA 92701-4593

Junior Lienor:

BANCENTRE CORP.
Managing Agent, Officer or Director
20839 SE Evergreen Hwy
Camas, WA 98607-2561

20 Largest Unsecured Creditors:

| | | |
|---|---|---|
| Asbury Automotive Group Kelly S. Baker, Senior Attorney 2905 Premiere Parkway, NW Suite 300 Duluth, GA 30097 | Bank of America 900 Samoset Drive DES 023 03 02 Newark, DE 19713-6000 | Bank Of America Managing Agent, Officer & Director PO Box 982235 El Paso, TX 79998 |
| Bank of America Dan Butler, Senior VP 111 Westminster Street Providence, RI 02903 | Bank of America, N.A. 1 Financial Plaza Mailstop: RII-537-01 Attn Dan Butler Providence, RI 02903 | Cash Management Solutions 1850 Borman Ct Saint Louis, MO 63146 |
| Citibank Citicorp Credit Services/Centralize Managing Agent, Officer or Director PP Box 20507 Kansas City, MO 64195 | Citicards 15 00 Bottonfield Street Columbus, OH 43228 | Frank W. Battaile Law Office of Frank W. Battaile 575 Anton Blvd Suite 300 Costa Mesa, California 92626 |
| GemCap Lending I LLC Managing Agent, Officer or Director 24955 Pacific Coast Highway Suite A202 Malibu, CA 90265 | Halbert B Rasmussen Manning Leaver Bruder, et al 5750 Wilshire Blvd Suite 655 Los Angeles, CA 90036-3637 | Hines Carder Managing Agent, Officer or Director 3090 Bristol Street Suite 300 Costa Mesa, CA 92626 |
| Internal Revenue Service PO Box 7346 Philadelphia, PA 19114-7346 | Jay Freedman Law Office of Jay Freedman 2459 Eastbluff Ave Newport Beach, CA 92660 | Jennifer Jackson/Shelly C. Gopaul Bryan Cave, LLP 120 Broadway Suite 300 Santa Monica, CA 90401 |
| Joshua M. Wolff Wolff Law Corporation 9160 Irvine Center Dr Suite 200 Irvine, CA 92618-4683 | Mach 1 Autogroup, Mach 1 RSMH and Craig Baptiste c/o Stephen Marcus/Gittler Bradford 10537 Santa Monica Blvd Third Floor Los Angeles, CA 90025 | Marsha Houston/Christopher Rivas Reed Smith LLP 355 South Grand Ave Suite 2900 Los Angeles, CA 90071 |

Case Number: 8:13-bk-14702-MW

| | | |
|---|---|---|
| Nichols Capistrano Associates do Layne L. Liddle/George Liddle Law Offices of Liddle & Liddle 310 S Vermont Ave Glendora, CA 91741 | Nuttell & Company Bruce Nuttell 1240 North Van Buren Street Suite 103 Anaheim, CA 92807 | Ogletree Deakins Nash Smoak et al Managing Agent, Officer or Director 695 Town Center Dr Suite 1500 Costa Mesa, CA 92626 |
| Pacific Mercantile Bank Managing Agent, Officer or Director 949 South Coast Dr Suite 105 Costa Mesa, CA 92626 | Robert A. Boghosian Cohen Tauber Spievack & Wagner 420 Lexington Avenue Suite 2400 New York, NY 10170 | Rutan & Tucker Managing Agent, Officer & Director 611 Anton Boulevard Costa Mesa, CA 92626 |
| Sean M Sherlock/Lyndsey A Torp Snell & Wilmer, LLP 600 Anton Blvd Suite 1400 Costa Mesa, CA 92626 | Fred Harper c/o Kerman E. Kaeder Attorney at Law 110 West C Street, Suite 1300 San Diego, CA 92101 | WM Capital Partners Managing Agent, Officer or Director 500 Fifth Ave Suite 2440 New York, NY 10110 |
| WM Capital Partners Managing Agent, Officer or Director Tindall Square Building 505 Pecan St., Suite 101 Fort Worth, TX 76102 | Frank W. Battaile Law Office of Frank W. Battaile 2301 Dupont Dr., Suite 530 Irvine, CA 92626-7502 | |

# Legal Description

Loan No.  __14-068024-9__

For property located at:
__Lot 8, Kalihiwai Road, D  Kilauea, HI  96754__

The legal description of said property is described as follows:

FIRST:

Condominium Unit No. D (hereafter called the "Apartment") comprising a portion of "KALIHIWAI BAY VIEW ESTATES", a condominium project (hereinafter called the "Project" as described in and established by Declaration of Condominium Property Regime dated March 13, 1998, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 98-049081, as the same may have been amended from time to time (hereafter called the "Declaration") and as shown on the plans of the Project recorded in said Bureau of Conveyances as Condominium File Plan No. 2715, as the same may have been amended from time to time (hereinafter called the "Condominium Map").

TOGETHER WITH exclusive use of the limited common element appurtenant thereto, and appurtenant easements as described in said Declaration and non-exclusive easements in the common elements designed for such purposes for ingress to, egress from, utility services for, and support, maintenance and repair of said Unit which are shown on the Condominium Map for the Project or otherwise of record, in the other common elements for use according to their respective purposes, and in all other Units of said Project.

SECOND:

An undivided 20% interest in all common elements of the project including the land upon which said project is located as established for said Apartment by the Declaration, as amended, or such other percentage interest as hereinafter established for said apartment by any amendment of the Declaration, as tenant in common with the other owners and tenants thereof.

Being all the property conveyed by the following:

Apartment Deed

Grantor:     Gary Alvord and Lauren Alvord, husband and wife
Grantee:     Marc J. Spizzirri and Candee C. Spizzirri, Trustees of the Spizzirri Family Trust under unrecorded Declaration of Trust dated November 11, 1997, with full power to sell, convey, mortgage, lease, etc.
Dated:       February 25, 2003
Recorded:    February 28, 2003, in the Bureau of Conveyances of the State of Hawaii, Document No. 2003-037686.

LEGALA      Rev. 05/10/00

18

## Legal Description

Loan No.  14-068024-9

For property located at:
**Lot 8  Kalihiwai Road, D  Kilauea, HI  96754**

The legal description of said property is described as follows:

The lands(s) upon which said Condominium Project is located is described as follows:

All of that certain parcel of land (being portion(s) of the land(s) described in and covered by Land Patent Number 8173, Land Commission Award Number 8559-B, Apana 39 to William C. Lunalilo, and Royal Patent Number 7186, Land Commission Award Number 11065, Apana 1 to Alahipa) situate, lying and being at Kalihiwai, Island and County of Kauai, State of Hawaii, being LOT 8 of the "ANINI VISTA SUBDIVISION", containing an area of 17.232 acres, more or less, and being more particularly described as per survey of Ronald J. Wagner, Land Surveyor, with Wagner Engineering Services, Inc., dated June 2, 1997.

Tax Map Key:  5-3-009-008, CPR 0004

LEGALA          Rev. 05/10/00

)9

B6A (Official Form 6A) (12/07)

In re    **Marc Joseph Spizzirri**                                    Case No.    **8:13-bk-14702**
                                  _____,
                              Debtor

## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Single Family**<br>**Location: 3292 Kalihiwai Road, Kilauea, Kauai** | **Spizzirri Family Trust** | - | **4,200,000.00** | **3,800,000.00** |
| **Single Family Residence**<br>**Location: 30721 Hunt Club Drive, San Juan Capistrano CA 92675** | **Spizzirri Family Trust** | - | **1,800,000.00** | **3,790,574.00** |

|  |  |  |
|---|---|---|
| Sub-Total > | **6,000,000.00** | (Total of this page) |
| Total > | **6,000,000.00** |  |

  **0**    continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Software Copyright (c) 1996-2013 - CCH INCORPORATED - www.bestcase.com         EXHIBIT 1                    Best Case Bankruptcy

R-372        STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED
JAN 30, 2004        08:01 AM

Doc No(s) 2004-020329

/s/ CARL T. WATANABE
REGISTRAR OF CONVEYANCES

20    1/1    Z3

| LAND COURT SYSTEM | | REGULAR SYSTEM |
| --- | --- | --- |
| AFTER RECORDATION, RETURN TO: | | RETURN BY: MAIL ☐ PICKUP ☒ |

First Republic Bank
101 Pine Street
San Francisco, CA 94111
Attn: Loan Review Department

FNTIC 923672
(19 P&S)

| Tax Map Key No.: | 5-3-009-008, CPR 0004 |
| --- | --- |
| FRB Loan No.: | 14-068024-9 |
| Escrow/Closing No.: | 141235 |

## CONSTRUCTION AND PERMANENT MORTGAGE,
## SECURITY AGREEMENT AND FINANCING STATEMENT

THIS MORTGAGE, SECURITY AGREEMENT AND FINANCING STATEMENT ("Security Instrument") is made on **December 3, 2003**, by **Marc J. Spizzirri and Candee C. Spizzirri, Trustees of the Spizzirri Family Trust under unrecorded Declaration of Trust dated November 11, 1997, with full power to sell, convey, mortgage, lease, etc.**

("Borrower"), in favor of FIRST REPUBLIC BANK, which is organized and existing under the laws of Nevada, and whose address is 101 Pine Street, San Francisco, CA 94111 ("Lender"). Borrower owes Lender the principal sum of **One Million, Six Hundred Thousand and No/100 --------------------------------------** Dollars (U.S. $ **1,600,000.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on the "Maturity Date" referred to in the Construction Rider attached hereto or as subsequently certified in a supplement to this Security Instrument which is executed by Lender and recorded in the Bureau of Conveyances of the State of Hawaii or the Office of the Assistant Registrar of the Land Court of the State of Hawaii, as applicable. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest advanced under paragraph 7 below to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in **KAUAI**, State of Hawaii:

**All of the property described in the legal description attached hereto and incorporated herein by reference,**

which has the address of **Lot 8 Kalihiwai Road, D Kilauea, HI  96754**

("Property Address");

SUBJECT, HOWEVER, to the encumbrances noted in the legal description.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Construction - Permanent Mortgage, Security
Agreement and Financing Statement                    1 of 8

Initial here: 
9-2-HH1                    Rev. 10/02/00

EXHIBIT 2                    18

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1.     Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2.     Funds for Taxes and Insurance.** Subject to applicable law and as may be required by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8 below in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amount permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21 below, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3.     Application of Payments.**
Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 above shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2 above; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.**
Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2 above, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Construction - Permanent Mortgage, Security
Agreement and Financing Statement                    Page 2 of 8

Initial here: _____  _____
                                    912P2HI              Rev. 10/02/00

EXHIBIT 2                                                              19

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5.    Hazard or Property Insurance.**
Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7 below.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 above or change the amount of the payments. If under paragraph 21 below the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**
Borrower shall occupy, establish, and use the Property as Borrower's principal or secondary residence within sixty days after the "Permanent Loan Commencement Date" referred to in the Construction Rider attached hereto and shall continue to occupy the Property as Borrower's principal or secondary residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18 below, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.**
If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts all bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.**
If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premiums being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept or retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be accepted, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance terminates in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.**
Lender or its agent may make reasonable entries upon and inspection of the Property. Lender shall give Borrower notice at the time of or prior to inspection specifying reasonable cause for the inspection.

**10. Condemnation.**
The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 above or change the amount of such payments.

Construction - Permanent Mortgage, Security
Agreement and Financing Statement                 Page 4 of 8                Initial here: _____  _____
                                                                             912P4H1        Rev. 10/02/00

EXHIBIT 2                                                                                        21

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.**
Extensions of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.**
The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17 below. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.**
If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.**
Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.**
This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.**
Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest In Borrower.**
If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Construction - Permanent Mortgage, Security
Agreement and Financing Statement          Page 5 of 8          Initial here: _____   _____          912FSIII          Rev. 10/02/00

EXHIBIT 2

## 18. Borrower's Right to Reinstate.

If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17 above.

## 19. Sale of Note; Change of Loan Servicer.

The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payment should be made. The notice will also contain any other information required by applicable law.

## 20. Hazardous Substances.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

## 21. Acceleration; Remedies.

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 above unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is sent to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

EXHIBIT 2                                                                                    23

If Lender invokes the power of sale, Lender shall give Borrower notice of sale in the manner provided in paragraph 14. Lender shall publish a notice of sale and shall sell the Property at the time and place and under the terms specified in the notice of sale. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**22.   Release.**
Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23.   Waivers.**
Borrower relinquishes all right of dower and curtesy in the Property.

**24. Requests for Notices.**
Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

**25. Statement of Obligation Fee.**
Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**26. Riders to this Security Instrument.**
If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were part of this Security Instrument.

[X]  Adjustable Rate Rider          [X]  Construction Rider          [ ]  1-4 Family Rider

[ ]  Condominium Rider          [ ]  Planned Unit Development Rider          [ ]  Second Home Rider

[X]  Exhibit "A" - Legal Description

[X]  Other(s) [specify]    __Inter Vivos Trust Rider_____

Construction - Permanent Mortgage, Security
Agreement and Financing Statement          Page 7 of 8          Initial here: _____ _____
912F7HI          Rev. 10/02/00

EXHIBIT 2          24

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECURITY INSTRUMENT, NOTICE IS HEREBY GIVEN THAT LENDER MAY NOT MAKE THE GRANTING OF THE LOAN CONTINGENT ON THE PROCURING OF ANY INSURANCE POLICY WITH AN INSURANCE COMPANY DESIGNATED BY LENDER.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____(Seal)　　　_____(Seal)
Marc J. Spizzirri, Trustee　-Borrower　　Candee C. Spizzirri, Trustee　-Borrower

_____(Seal)　　　_____(Seal)
　　　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　-Borrower

**[Sign Original Only]**

_____
[Space Below This Line For Acknowledgment]

STATE OF ~~HAWAII~~ CALIFORNIA            )
                                          ) SS.
CITY AND COUNTY OF ~~San Juan Capistrano~~ Orange  )

On this _18th_ day of _December 2003_, before me personally appeared
MARC J Spizzirri and Candee C. Sp to me personally known, who, being by me duly sworn or affirmed, did say that such person executed the foregoing instrument as the free act and deed of such person, and if applicable in the capacity shown, having been duly authorized to execute such instrument in such capacity.



```
LOLA L. BELK
Commission # 1353317
Notary Public - California
Orange County
My Comm. Expires Apr 23, 2006
```

_____
Print Name: _Lola L. Belk_
Notary Public, State of ~~Hawaii~~ Calif
My commission Expires: _4/23/06_

Construction - Permanent Mortgage, Security
Agreement and Financing Statement             Page 8 of 8             912P8HI             Rev. 10/02/00

EXHIBIT 2

25

# CONDOMINIUM RIDER

**Loan Number** 14-068024-9

THIS CONDOMINIUM RIDER is made this **3rd** day of **December, 2003**,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

**First Republic Bank**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**Lot 8 Kalihiwai Road, D  Kilauea, HI  96754**

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

**Kalihiwai Bay View Estates**

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae / Freddie Mac UNIFORM INSTRUMENT
UNI-FORM (R) / MLM / 3140P1 / 08-00          Page 1 of 2          CONDOP1          Rev. 12/01/00

9

EXHIBIT 2

26

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____     _____
Marc J. Spizzirri, Trustee          Date          Candee C. Spizzirri, Trustee          Date

_____     _____
                              Date                                          Date

[Sign Original Only]

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae / Freddie Mac UNIFORM INSTRUMENT
UNI-FORM (R) / MLM / 3140P2 / 08-00                    Page 2 of 2                    CONDOP2          Rev. 12/01/00

EXHIBIT 2

27

## ADJUSTABLE RATE RIDER
### (1 Month Libor)

Loan No. **14-068024-9**

THIS ADJUSTABLE RATE RIDER is made this **3rd** day of _____ **December, 2003** _____, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **First Republic Bank** _____ (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**Lot 8 Kalihiwai Road, D  Kilauea, HI  96754**

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THE NOTE LIMITS THE MAXIMUM RATE I MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. CONSTRUCTION LOAN

The loan will be advanced to me pursuant to a Construction Loan Agreement between the Lender and me (the "Construction Loan Agreement"). The period of time commencing on the date hereof and ending on the "Completion Date" under the Construction Loan Agreement is referred to herein as the "Construction Period." The first day after the Completion Date is referred to herein as the "Permanent Loan Commencement Date." The period of time commencing on the Permanent Loan Commencement Date and ending on the Maturity Date referred to in the Security Instrument is referred to herein as the "Permanent Loan Period." The Construction Rider attached to the Security Instrument sets forth the interest rate applicable during the Construction Period. The expiration of the Construction Period may be evidenced by the Lender's execution and recordation in the Official Records of the County where the Property is located of a supplement to the Security Instrument which includes a certification stating the Completion Date, the Permanent Loan Commencement Date, the Maturity Date, the principal balance of my loan on the Permanent Loan Commencement Date and the interest rate on my loan as of the Permanent Loan Commencement Date (which is subject to adjustment pursuant to Section B below). Any subsequent holder of the Security Instrument or the Note shall be entitled to rely thereon.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

#### (A) Change Dates

The interest rate I will pay may change on the Permanent Loan Commencement Date, and the first day of every _____ **1** _____ month thereafter. The Permanent Loan Commencement Date and each other date on which my interest rate could change is called a "Change Date." Notwithstanding anything to the contrary set forth herein, the "Current Index" utilized in calculating the interest rate on the first Change Date during the Permanent Loan Period (i.e., the Permanent Loan Commencement Date) shall be the most recent Index (as defined below) figure available as of date 15 days before said Change Date.

#### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of the London Interbank Offered Rate ("Libor") for one-month United States dollar-denominated deposits as published daily in the Wall Street Journal. The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index."

If the Index is no longer available or is otherwise unpublished or in Note Holders sole discretion is determined to be substantially recalculated, the Note Holder will choose a new index. The Note Holder will give me notice of this choice.

#### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **One and Eight-Tenths** _____ percentage points ( **1.800** %) to the Current Index. The Note Holder will then round the result of this addition to the next highest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section (D) below, this rounded amount will be my new interest rate until the next Change Date.

1 Month LIBOR

Page 1 of 3                    R822P1              Rev. 10/04/00

*ll*

EXHIBIT 2                    28

The Note Holder will then determine the amount of the monthly payment. During the first _____**10**_____ years of the Permanent Loan Period, the Note Holder will determine the amount of my monthly payment of interest. During the remainder of the loan term when principal and interest payments are required, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)  Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date (i.e. the Permanent Loan Commencement Date) is only limited by the life of the loan cap set forth below. During the Permanent Loan Period, my interest rate will never exceed _____**11.950**_____ % (the "life of the loan cap").

**(E)  Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any payment change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## C. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
During the Construction Period, Uniform Covenant 18 of the Security Instrument shall apply.

From and after commencement of the Permanent Loan Period, Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.  If** all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. During the Permanent Loan Period only, Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

1 Month LIBOR

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____  12/18/03        _____  12/18/03
Marc J. Spizzirri, Trustee        Date              Candee C. Spizzirri, Trustee       Date

_____                  _____
                                  Date                                                 Date

**[Sign Original Only]**

1 Month LIBOR

Page 3 of 3                    R822P3              Rev. 10/04/00

13

EXHIBIT 2                                          30

## FIRST REPUBLIC BANK
## CONSTRUCTION RIDER

Loan No. **14-068024-9**

THIS CONSTRUCTION RIDER is made this **3rd** day of **December, 2003**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **First Republic Bank**, (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**Lot 8 Kalihiwai Road, D  Kilauea, HI  96754**

ADDITIONAL COVENANTS.  In addition to the covenants made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### 1. CONSTRUCTION LOAN AGREEMENT

Borrower shall promptly pay and perform when due all of Borrower's obligations under that certain Construction Loan Agreement dated the same date as the Security Instrument (the "Construction Loan Agreement") and all amendments thereto.  The loan evidenced by the Note will be advanced to Borrower pursuant to the Construction Loan Agreement.  The period of time commencing on the date hereof and ending on the "Completion Date" under the Construction Loan Agreement is referred to herein as the "Construction Period."  The first day after the Completion Date occurs is referred to herein as the "Permanent Loan Commencement Date."  The period of time commencing on the Permanent Loan Commencement Date and ending on the Maturity Date described below is referred to herein as the "Permanent Loan Period."  The expiration of the Construction Period may be evidenced by the Lender's execution and recordation in the Official Records of the County where the Property is located of a supplement to the Security Instrument which includes a certification stating the Completion Date, the Permanent Loan Commencement Date, the Maturity Date and the principal balance of the loan evidenced by the Note on the Permanent Loan Commencement Date.  Any subsequent holder of the Security Instrument shall be entitled to rely on such certification.

### 2. MATURITY DATE

The indebtedness evidenced by the Note, if not earlier paid, shall become due and payable on **December 1, 2033**. That date is called the "Maturity Date."

### 3. INTEREST

During the Construction Period, I will pay interest at a yearly rate of **4.2500** %.  The interest rate I will pay will change in accordance with Section 5 of this Rider.  The interest rate required by this Section 3 and Section 5 below is the rate I will pay during the Construction Period both before and after any default described in the Note, except as set forth in the Construction Loan Agreement with respect to the interest chargeable after certain defaults during the Construction Period.

### 4. PAYMENTS

**(A)  Time of Payments**
I will pay interest payments every month during the Construction Period and on the fifteenth day of the month after the termination thereof, in an amount equal to the interest which has accrued on the unpaid principal during the prior month.

I will make my monthly payments on the fifteenth day of each month beginning on the fifteenth day of the first month following the initial disbursement under the Construction Loan Agreement.  My monthly payments will be applied to interest before principal.

### 5. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A)  Change Dates**
The interest rate I will pay may change on the first day of **February 2004**, and the first day of every  month thereafter during the Construction Period.  Each date on which my interest rate could change is called a "Change Date."

EXHIBIT 2

31

**(B) The Index**

Beginning with the first Change Date. my interest rate will be based on an Index.The "Index" is **Bank of America's**
Reference Rate (PRIME) as made available by **Bank of America's** main office in **Charlotte, NC.** .
The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index." If the Index
is no longer available or is otherwise unpublished or in Note Holders sole discretion is determined to be substantially
recalculated, the Note Holder will choose a new index. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before   each   Change   Date,   the   Note   Holder   will   calculate   my   new   interest   rate   by   adding
**One-Quarter** percentage points ( **0.2500** %) to the Current
Index.  If the result of this addition is not in an increment of one-eighth of one percentage point (0.125%) then the Note Holder
will round the result of this addition to the next highest one-eighth of one percentage point (0.125%).  Subject to the limits stated
in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**(D) Limits on Interest Rate Changes**

My new interest rate will never increase to more than **18.0000** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning
on the first monthly payment date after the Change Date until the amount of my monthly payment changes again. The interest
rate may also change during the Permanent Loan Period as provided in the Note or in any other Rider attached to the Security
Instrument.

**6. SECURITY AGREEMENTS; FIXTURE FILING**

The term "Property" as used in this Security Instrument shall also include all building materials, appliances, equipment, machinery,
goods and fixtures (collectively, "personal property") now or hereafter located on or attached or affixed to the real property
described herein, the cost of which was paid, in whole or in part, from the proceeds of the loan made by Lender to Borrower
pursuant to the Construction Loan Agreement, and Borrower hereby grants to Lender a security interest in and to the personal
property and all proceeds hereof, pursuant to the Security Instrument and the Uniform Commercial Code of the state where the real
property is located, and all rights and remedies of a secured party under the Uniform Commercial Code in the event of any breach of
any covenant or agreement in the Security Instrument.  Borrower shall execute and deliver such financing statements as Lender may
request in order to perfect Lender's security interest in the personal property.  The Security Instrument constitutes a fixture filing
with respect to any and all fixtures or any goods which may now be or may hereafter become fixtures included within the term
"Property."

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.


Marc J. Spizzirri, Trustee                        Date          Candee C. Spizzirri, Trustee                      Date


_____                              _____
                          Date                                                          Date

**[Sign Original Only]**

Page 2 of 2                          R911P2              Rev. 10/04/00

EXHIBIT 2                                                                32

# INTER VIVOS TRUST RIDER

Loan No. 14-068024-9

THIS INTER VIVOS TRUST RIDER is made this **3rd** day of **December, 2003** ,and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed of even date (the "Security Instrument") given by **Marc J. Spizzirri**
**Candee C. Spizzirri**                                                                     , as
Trustee (the "Trustee", which term as used herein shall be deemed to refer to any successor Trustee of the Trust) of the **Spizzirri Family Trust under unrecorded**
**Declaration of Trust dated November 11, 1997, with**
**full power to sell, convey, mortgage, lease, etc.**                                        (the
"Trust") to secure a Note of even date made by:
**Marc J. Spizzirri, Trustee          Marc J. Spizzirri**
**Candee C. Spizzirri, Trustee        Candee C. Spizzirri**
("Borrower") and payable to the order of **First Republic Bank**                            ("Lender", which term, as used herein, shall be deemed to refer in each case to any assignee of Lender's rights under that Note) and covering the property described in the Security Instrument (the "Property") located at:

**Lot 8 Kalihiwai Road, D  Kilauea, HI  96754**

**1. THE TRUST.**
Each of the undersigned (which term as used herein shall include in each case the Trustee, each beneficiary of the Trust and Borrower) hereby certifies to Lender that: (i) title to the Property is held by the Trustee on behalf of the Trust; and (ii) the Trust is an inter vivos trust.

**2. NOTIFICATION OF TRANSFERS AND CHANGES.**
Within thirty (30) days prior to the occurrence of any of the following events, each of the undersigned shall provide written notice to Lender of: (a) any change in the Trustee of the Trust (whether such change is temporary or permanent), (b) any sale, transfer, assignment or other disposition [whether by operation of law or otherwise] of any beneficial interest in the Trust, or (c) any change in the occupancy of the Property.

**3. LENDER'S OPTION TO ACCELERATE.**
If, without Lender's prior written consent, (a) there is a change in the Trustee of the Trust, or (b) there is a sale, transfer, assignment or other disposition of any beneficial interest in the Trust, or (c) there is a change in the occupancy of the Property, Lender may, at its option, require immediate payment in full of all sums secured buy the Security Instrument. If Lender demands payment in full of all sums secured by the Security Instrument, lender shall provide the same period of notice for payment as provided in paragraph 17 of the Security Instrument, and if Borrower fails to pay within such period of time, Lender may invoke any and all remedies permitted by the Security Instrument without further notice to or demand on Borrower.

**4. WARRANTIES.**
The Trustee warrants on behalf of the Trust that: (a) this Security Instrument is executed at Borrower's request; (b) the Trustee has not and will not, without prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer or otherwise dispose of all or any portion of the Property; and (c) the Trustee has established adequate means of obtaining from Borrower on a continuing basis financial and other information pertaining to Borrower's financial condition. The Trustee agrees to keep adequately informed from such means of any facts, events or circumstances which in any way might affect the Trustee's risks hereunder, and the Trustee further agrees that Lender shall have no obligation to disclose to the Trustee information or material acquired in the course of Lender's relationship with Borrower.

EXHIBIT 2

## 5. WAIVERS.

The Trustee waives any right to require Lender to (a) proceed against any person, including Borrower; (b) proceed against or exhaust any collateral pledged by Borrower or any other person; (c) give notice of terms, time and place of any public or private sale of collateral in the form of personal property pledged by Borrower or comply with any other provisions of Section 9-504 of the Uniform Commercial Code as adopted and in effect in the applicable jurisdiction; (d) pursue any other remedy in Lender's power, or (e) make any presentment, demands for performance, or give any notices of non-performance, protests, notices of protests or notices of dishonor in connection with any obligations or evidences of indebtedness held by Lender as security, in connection with any obligations or evidences of indebtedness which constitute in whole or in part the obligations secured hereby or in connection with the creation of new or addition obligations. The trust waives any defense arising by reason of: (a) any disability or other defense of Borrower or any other person; (b) the cessation from any cause whatsoever, other than payment in full, of the obligations of Borrower or any obligation secured hereby for purposes other than the purposes represented by Borrower to Lender or intended or understood by Lender or Borrower; (d) any act or omission by Lender which directly or indirectly results in or aids the discharge of Borrower or any obligation secured hereby by operation of law or otherwise; or (e) any modification of the obligations secured hereby, in any form whatsoever, including, without limitation, the renewal, extension, acceleration, other change in terms of such obligations or any part thereof, including increase or decrease of the rates of interest thereon. Until all obligations secured hereby shall have been paid in full, the Trustee shall have no right of subrogation, and the Trustee further waives any right to enforce any remedy which Lender now has or may hereafter have against Borrower, or any other person, and waives any benefit of, or any right to participate in any collateral security whatsoever now or hereafter held by Lender including any rights which the Trustee might have by reason of any rights, powers or remedies of Borrower in connection with any anti-deficiency or similar laws limiting or qualifying Borrower's obligations.

## 6. TRUSTEE'S UNDERSTANDINGS WITH RESPECT TO WAIVERS.

The Trustee warrants and agrees that each of the waivers set forth above are made with the Trustee's full knowledge of their significance and consequences, and that under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any of said waivers are determined to be contrary to any applicable law or public policy, such waivers shall be effective only to the extent permitted by law.

## 7. SUBORDINATION.

Any indebtedness of Borrower now or hereafter held by the Trustee is hereby subordinated to the obligations of Borrower secured hereby to Lender. Such indebtedness of Borrower to the Trustee is assigned to Lender as security for this Security Instrument and the obligations secured hereby and if Lender requests, shall be collected and received by the Trustee as Trustee for Lender and paid over to Lender on account of the obligations of Borrower to Lender but without reducing or affecting in any manner the liability of the Trustee under the other provisions of this Security Instrument. Any Notes now or hereafter evidencing such indebtedness of Borrower to the Trustee shall be marked with a legend that the same are subject to this Security Instrument and, if Lender so requests, shall be delivered to Lender. The Trustee will, and Lender is hereby authorized, in the name of the Trustee from time to time to execute and file financing statements and continuation of statements and execute such other documents and take such other action as Lender deems necessary or appropriate to perfect, preserve and enforce its rights hereunder.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Inter Vivos Trust Rider.

Spizzirri Family Trust under unrecorded
Declaration of Trust dated November 11, 1997, with
full power to sell, convey, mortgage, lease, etc.

(Name of the Trust)

**BY SIGNING BELOW,** Borrower and each Beneficiary of the Trust each acknowledges the terms and covenants contained in this Inter Vivos Trust Rider and agrees to be bound thereby and makes the certifications set forth herein.

| | | |
|---|---|---|
| Marc J. Spizzirri | -Beneficiary of Trust | Candee C. Spizzirri  -Beneficiary of Trust |
| Marc J. Spizzirri | -Borrower | Candee C. Spizzirri  -Borrower |

Inter Vivos Trust Rider

EXHIBIT 2

:75



R-1065          STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED
FEB 28, 2003          10:00 AM

Doc No(s) 2003-037686



/s/ CARL T. WATANABE
REGISTRAR OF CONVEYANCES

CONVEYANCE TAX: $945.00

10      1/1      Z2

LAND COURT SYSTEM                    REGULAR SYSTEM

After Recordation, Return by:  Mail ( X )    Pickup (   )                                    Ref (

MR MARC SPIZZIRRI TTEEE                    TG:  ~~0250825~~ 2002638274

THE SPIZZIRRI FAMILY TRUST                 TGE: A2-402-0673

33395 CAMINO CAPISTRANO                     Lisa L. R. Wall

SAN JUAN CAPISTRANO CA 92675

Total pages: 10

TYPE OF DOCUMENT:

    APARTMENT DEED

PARTIES TO DOCUMENT:

    GRANTOR:  GARY ALVORD and LAUREN ALVORD,
              husband and wife
    GRANTEE:  MARC J. SPIZZIRRI and CANDEE C. SPIZZIRRI, Trustees of
              the Spizzirri Family Trust under unrecorded Declaration of Trust
              dated November 11, 1997
              33395 Camino Capistrano
              San Juan Capistrano, California 92675

TAX MAP KEY FOR PROPERTY:

    (4) 5-3-009-008        CPR No. 0004        Apt. No. D

{C:\WINDOWS\TEMPORARY INTERNET FILES\CONTENT.IE5\MA4JSAJ7\KALIHIWAI BAY VIEW ESTATES APT.
ALVORD TO SPIZZIRRI TRUST (W0060307).DOC}

EXHIBIT 2

35

# APARTMENT DEED

KNOW ALL PEOPLE BY THESE PRESENTS:

GARY ALVORD and LAUREN ALVORD, husband and wife, whose mailing address is 4105 182nd Avenue SE, Issaquah, Washington 98027, hereinafter called the "Grantor", in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration paid by MARC J. SPIZZIRRI and CANDEE C. SPIZZIRRI, Trustees of the Spizzirri Family Trust under unrecorded Declaration of Trust dated November 11, 1997, whose mailing address is 33395 Camino Capistrano, San Juan Capistrano, California 92675, hereinafter referred to as "Grantee", to EXCHANGE ACCOMMODATORS, INC., a Hawaii corporation, in connection with an exchange by Grantor under Section 1031 of the Internal Revenue Code of 1986, the receipt of which is hereby acknowledged, do hereby grant and convey unto the Grantee, his successors in trust and assigns, IN TRUST, for the uses and purposes and with all the powers contained in the aforesaid trust instrument, including without prejudice to the generality of the foregoing, full power and authority to sell, convey, exchange, partition, mortgage, lease, pledge or otherwise deal with and dispose of any of the lands or other property or interests of the trust estate according to the Grantee's sole judgment and discretion, the property described in Exhibit "A" attached hereto and incorporated herein by reference.

TOGETHER WITH the reversions, remainders, rents, issues, and profits thereof, and all of the estate, right, title, and interest of the Grantor, both at law and in equity, therein and thereto.

TO HAVE AND TO HOLD the same, together with the improvements thereon and all rights, easements, privileges and appurtenances thereunto belonging or appertaining or held and enjoyed therewith, unto the Grantee, as Trustee aforesaid, forever.

The Grantor hereby covenants with the Grantee that the Grantor is lawfully seised in fee simple of the premises described herein and has good right to sell and convey the same; that the same are free and clear of all encumbrances except as set forth herein and except for the lien of real property taxes not yet required by law to be paid; and that the Grantor will WARRANT AND DEFEND the same unto the Grantee against the lawful claims and demands of all persons, except as aforesaid.

This conveyance and the respective covenants of the Grantor and the Grantee shall be binding on and inure to the benefit of the Grantor and the Grantee, respectively. The terms "Grantor" and "Grantee" as and when used herein, or any pronouns used in place thereof, shall mean and include the singular or plural number, individuals, partnerships, trustees and corporations, and each of their respective heirs, personal representatives, successors and assigns. All covenants and obligations undertaken by two or more persons shall be deemed to be joint and several unless a contrary intention is clearly expressed herein.

{C:\WINDOWS\TEMPORARY INTERNET FILES\CONTENT.IE5\MA4JSAJ7\KALIHIWAI BAY VIEW ESTATES APT. ALVORD TO SPIZZIRRI TRUST (W0060307).DOC}

EXHIBIT 2

36

The Grantee hereby agrees and covenants with the Grantor that the Grantee will observe, perform, comply with and abide by the Declaration of Condominium Property Regime and the Bylaws described in Exhibit "A" hereto.

This Apartment Deed may be executed in counterparts. Each counterpart shall be executed by one or more of the parties hereinbefore named and the several counterparts shall constitute one instrument to the same effect as though the signatures of all the parties are upon the same document.

IN WITNESS WHEREOF, the Grantor and Grantee have caused these presents to be duly executed on this 25th day of February, 20 03 .

_____
GARY ALVORD

_____
LAUREN ALVORD

                                        **Grantor**


_____
MARC J. SPIZZIRRI, Trustee of the Spizzirri Family Trust under unrecorded Declaration of Trust dated November 11, 1997


_____
CANDEE C. SPIZZIRRI, Trustee of the Spizzirri Family Trust under unrecorded Declaration of Trust dated November 11, 1997

                                        **Grantee**

{C:\WINDOWS\TEMPORARY INTERNET FILES\CONTENT.IE5\3JA4JSAJ7\KALIHIWAI BAY VIEW ESTATES APT. ALVORD TO SPIZZIRRI TRUST (W0060307).DOC}

EXHIBIT 2                                                    37

The Grantee hereby agrees and covenants with the Grantor that the Grantee will observe, perform, comply with and abide by the Declaration of Condominium Property Regime and the Bylaws described in Exhibit "A" hereto.

This Apartment Deed may be executed in counterparts. Each counterpart shall be executed by one or more of the parties hereinbefore named and the several counterparts shall constitute one instrument to the same effect as though the signatures of all the parties are upon the same document.

IN WITNESS WHEREOF, the Grantor and Grantee have caused these presents to be duly executed on this _26_ day of _February._, 20 _03_ .


_____

GARY ALVORD


_____

LAUREN ALVORD

**Grantor**


_____

MARC J. SPIZZIRRI, Trustee of the Spizzirri Family Trust under unrecorded Declaration of Trust dated November 11, 1997


_____

CANDEE C. SPIZZIRRI, Trustee of the Spizzirri Family Trust under unrecorded Declaration of Trust dated November 11, 1997

**Grantee**


EXHIBIT 2                                           38

STATE OF _Washington_ )
) SS:
COUNTY OF _King_ )

    On this _25_ day of _February_, 20_05_, before me personally appeared GARY ALVORD, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed.



Name of Notary: _Jody Jackson_
Notary Public, in and for said County and State.

My commission expires: _July 1, 2005_

STATE OF _Washington_ )
) SS:
COUNTY OF _King_ )

    On this _25_ day of _February_, 20_05_, before me personally appeared LAUREN ALVORD, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that she executed the same as her free act and deed.



Name of Notary: _Jody Jackson_
Notary Public, in and for said County and State.

My commission expires: _July 1, 2005_

{C:\WINDOWS\TEMPORARY INTERNET FILES\CONTENT.IE5\MA4JSAJ7\KALIHIWAI BAY VIEW ESTATES APT. ALVORD TO SPIZZIRRI TRUST (W0060307).DOC}

EXHIBIT 2

39

STATE OF CALIFORNIA    )
                        ) SS:
COUNTY OF *Orange*    )

On this *26* day of *February*, 20*23*, before me personally appeared MARC J. SPIZZIRRI, Trustee of the Spizzirri Family Trust under unrecorded Declaration of Trust dated November 11, 1997, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed as said Trustee.



*Lola L. Belk*
Name of Notary:
Notary Public, in and for said County and State.

My commission expires: *4/23/06*

LOLA L. BELK
Commission # 1353317
Notary Public - California
Orange County
My Comm. Expires Apr 23, 2006

---

STATE OF *California*    )
                          ) SS:
COUNTY OF *Orange*    )

On this *26* day of *February*, 20*23*, before me personally appeared CANDEE C. SPIZZIRRI, Trustee of the Spizzirri Family Trust under unrecorded Declaration of Trust dated November 11, 1997, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that she executed the same as her free act and deed as said Trustee.

*Lola L. Belk*
Name of Notary:
Notary Public, in and for said County and State.

My commission expires: *4/23/06*



LOLA L. BELK
Commission # 1353317
Notary Public - California
Orange County
My Comm. Expires Apr 23, 2006

EXHIBIT 2

40

# EXHIBIT "A"

-FIRST:-

Condominium Unit No. D, together with its appurtenant limited common element land area, of the Condominium Project known as "KALIHIWAI BAY VIEW ESTATES", as established by the Declaration of Condominium Property Regime dated March 13, 1998, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 98-049081, and as shown on Condominium Map No. 2715 and any amendments thereto.

Together with exclusive use of the limited common element appurtenant thereto, and appurtenant easements as described in said Declaration and non-exclusive easements in the common elements designed for such purposes for ingress to, egress from, utility services for, and support, maintenance and repair of said Unit which are shown on the Condominium Map for the Project or otherwise of record; in the other common elements for use according to their respective purposes, and in all other Units of said Project.

-SECOND:-

An undivided   20% interest in all common elements of the Project, including the land described in said Declaration as established for said Unit by the Declaration, or such other percentage hereafter established for said Unit by any amendment of the Declaration, as tenant in common with the other owners and tenants thereof.

The land upon which said Condominium Project "KALIHIWAI BAY VIEW ESTATES" is located is described as follows:

All of that certain parcel of land (being portion(s) of the land(s) described in and covered by Land Patent Number 8173, Land Commission Award Number 8559-B, Apana 39 to William C. Lunalilo, and Royal Patent Number 7186, Land Commission Award Number 11065, Apana 1 to Alahipa) situate, lying and being at Kalihiwai, Island and County of Kauai, State of Hawaii, being LOT 8 of the "ANINI VISTA SUBDIVISION", containing an area of 17.232 acres, more or less, and being more particularly described as per survey of Ronald J. Wagner, Land Surveyor, with Wagner Engineering Services, Inc., dated June 2, 1997.

Said parcel of land being more particularly described in Declaration of Condominium Property Regime dated March 13, 1998, recorded in said Bureau of Conveyances as Document No. 98-049081.

Being the same premises conveyed to GARY ALVORD and LAUREN ALVORD, husband and wife, as Tenants by the Entirety, by Kalihiwai Bay View Estates Satisfaction Apartment Deed dated November 11, 1998, and recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 98-176815.

EXHIBIT 2

41

SUBJECT, HOWEVER, to the following:

1.      Reservation in favor of the State of Hawaii of all mineral and metallic mines.

2.      GRAVEYARD EASEMENT "B", containing an area of 9,959 square feet, more or less, as per survey of Ronald J. Wagner, Land Surveyor, with Wagner Engineering Services, Inc., dated June 2, 1997, and as set forth in Declaration of Condominium Property Regime dated March 13, 1998, recorded as Document No. 98-049081.

3.      GRAVEYARD EASEMENT "C", containing an area of 12,661 square feet, more or less, as per survey of Ronald J. Wagner, Land Surveyor, with Wagner Engineering Services, Inc., dated June 2, 1997, and as set forth in Declaration of Condominium Property Regime dated March 13, 1998, recorded as Document No. 98-049081.

4.      Restricted access into and from Anini Road, except where such access is permitted, as shown on the final subdivision map for the Anini Vista Subdivision approved by the Planning Commission, County of Kauai, on November 26, 1980.

5.      "Future 2:1 Slope Easement for Anini Road", as shown on the final subdivision map for the Anini Vista Subdivision approved by the Planning Commission, County of Kauai, on November 26, 1980.

6.      The terms and provisions, including the failure to comply with any covenants, conditions and reservations, contained in DEED dated January 20, 1967, recorded in said Bureau in Liber 5582 at Page 1.

The foregoing includes, but is not limited to, matters relating to the following:

"The rights, of persons having an interest in the graveyard sites shown on the map attached hereto for ingress to and egress from said graveyard sites over such route, roadway or path as may be designated from time to time by the Grantee".

7.      The terms and provisions, including the failure to comply with any covenants, conditions and reservations, contained in the AGREEMENT dated November 21, 1980, recorded in said Bureau in Liber 15273 at Page 507, by and between the COUNTY OF KAUAI, JAMES C. BLACKWELL, JR., and VIRGINIA R. BLACKWELL, re: no building permits shall be applied until construction of the off-site water line is commenced.

8.      The terms and provisions, including the failure to comply with any covenants, conditions and reservations, contained in the AGREEMENT TO INCORPORATE AGRICULTURAL RESTRICTIONS INTO INSTRUMENTS OF CONVEYANCE dated --- (acknowledged May 2, 1980), recorded in said Bureau in Liber 15457 at Page 110, by and between JAMES C. BLACKWELL and the COUNTY OF KAUAI PLANNING COMMISSION.

EXHIBIT 2

42

9.     The terms and provisions, including the failure to comply with any covenants, conditions and reservations, contained in the AGREEMENT dated April 29, 1997, recorded in said Bureau as Document No. 97-057327, by and between ALVIN AWAYA, as Ancillary Personal Representative of the Estate of Harry Weinberg, deceased, and PRINCEVILLE UTILITIES COMPANY, INC., re: water service.

10.     The terms and provisions, including the failure to comply with any covenants, conditions and reservations, contained in the DECLARATION OF RESTRICTIVE COVENANTS dated May 6, 1997, recorded in said Bureau as Document No. 97-061606.

11.     Right-of-Entry in favor of Citizens Utilities Company, dated March 18, 1997, recorded as Document No. 97-069217; granting a right-of-entry for utility purposes.

12.     Grant in favor of Princeville Utilities Company, Inc., dated September 16, 1997, recorded as Document No. 97-130955; granting an easement to construct, reconstruct, install, maintain, operate, repair and remove an underground waterline or lines, etc., as part of Grantee's water system, on, over, under and across Easement "W-3".

13.     The terms and provisions, including the failure to comply with any covenants, conditions and reservations, contained in the LIMITED WARRANTY DEED dated September 26, 1997, recorded in said Bureau as Document No. 97-138288.

14.     Claims arising out of customary or traditional rights and practices, including without limitation those exercised for subsistence, cultural, religious, access or gathering purposes as provided for in the Hawaii Constitution or the Hawaii Revised Statutes, as amended.

15.     Rights of others who may have easement or access rights in the land described herein.

16.     WAIVER AND RELEASE dated --- (acknowledged January 14, 1998), recorded in said Bureau as Document No. 98-011503, by STEPHEN W. LONG with the COUNTY OF KAUAI re: water service.

17.     The terms and provisions, including the failure to comply with any covenants, conditions and reservations, contained in the following:

DECLARATION OF CONDOMINIUM PROPERTY REGIME FOR "KALIHIWAI BAY VIEW ESTATES" CONDOMINIUM PROJECT dated March 13, 1998, recorded in said Bureau as Document No. 98-049081.

Condominium Map No. 2715 and any amendments thereto.

CONSENT AND JOINDER by CLARUM CORPORATION, a California corporation, by instrument dated March 30, 1998, recorded as Document No. 98-049083.

EXHIBIT 2

43

18.     The following easements as contained in Declaration of Condominium Property Regime, recorded as Document No. 98-049081; to-wit:

(A)     Easement "P-1", for pedestrian access purposes, in favor of this Project and Lot 9;

(B)     Easement "P-2", for pedestrian access purposes, in favor of Units C, D, and E; and

(C)     Easement "AU-1", a non-exclusive easement over Units A and C for access and utility purposes in favor of Unit B, as well as for Units A and C.

19.     The terms and provisions, including the failure to comply with any covenants, conditions and reservations, contained in the BY-LAWS OF THE ASSOCIATION OF APARTMENT OWNERS dated March 13, 1998, recorded in said Bureau as Document No. 98-049082.

CONSENT AND JOINDER by CLARUM CORPORATION, a California corporation, by instrument dated March 30, 1998, recorded as Document No. 98-049083.

20.     WAIVER AND RELEASE dated --- (acknowledged June 29, 2000), recorded in said Bureau as Document No. 2000-094383, by RICHARD JON MELVIN and LISA JANE CHAPIN, husband and wife, GARY ALVORD and LAUREN ALVORD, husband and wife, GEORGE JOHNSON and KAREN ANN STRUVE, husband and wife, CLAUDIA HERFURT, Trustee of that certain unrecorded Claudia Herfurt Revocable Living Trust, and JOHN SUPPES, President of CLARUM CORPORATION, a California corporation, with the COUNTY OF KAUAI, re: water service.

21.     GRANT to CITIZENS UTILITIES COMPANY dated July 3, 2000, recorded in said Bureau as Document No. 2001-032162, granting a perpetual right and easement for utility purposes.

22.     Any lien (or claim of lien) for services, labor or material arising from an improvement or work related to the land described herein.

EXHIBIT 2

44

# Legal Description

Loan No. <u>14-068024-9</u>

For property located at:
**Lot 8 Kalihiwai Road, D  Kilauea, HI  96754**
The legal description of said property is described as follows:

FIRST:

Condominium Unit No. D (hereafter called the "Apartment") comprising a portion of "KALIHIWAI BAY VIEW ESTATES", a condominium project (hereinafter called the "Project" as described in and established by Declaration of Condominium Property Regime dated March 13, 1998, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 98-049081, as the same may have been amended from time to time (hereafter called the "Declaration") and as shown on the plans of the Project recorded in said Bureau of Conveyances as Condominium File Plan No. 2715, as the same may have been amended from time to time (hereinafter called the "Condominium Map").

TOGETHER WITH exclusive use of the limited common element appurtenant thereto, and appurtenant easements as described in said Declaration and non-exclusive easements in the common elements designed for such purposes for ingress to, egress from, utility services for, and support, maintenance and repair of said Unit which are shown on the Condominium Map for the Project or otherwise of record, in the other common elements for use according to their respective purposes, and in all other Units of said Project.

SECOND:

An undivided 20% interest in all common elements of the project including the land upon which said project is located as established for said Apartment by the Declaration, as amended, or such other percentage interest as hereinafter established for said apartment by any amendment of the Declaration, as tenant in common with the other owners and tenants thereof.

Being all the property conveyed by the following:

Apartment Deed

Grantor:     Gary Alvord and Lauren Alvord, husband and wife
Grantee:     Marc J. Spizzirri and Candee C. Spizzirri, Trustees of the Spizzirri Family Trust under unrecorded Declaration of Trust dated November 11, 1997, with full power to sell, convey, mortgage, lease, etc.
Dated:       February 25, 2003
Recorded:    February 28, 2003, in the Bureau of Conveyances of the State of Hawaii, Document No. 2003-037686.

LEGALA        Rev. 05/10/00

18

EXHIBIT 3                                    45

# Legal Description

Loan No.  14~068024-9

For property located at:
**Lot 8  Kalihiwai Road, D  Kilauea, HI  96754**
The legal description of said property is described as follows:

The lands(s) upon which said Condominium Project is located is described as follows:

All of that certain parcel of land (being portion(s) of the land(s) described in and covered by Land Patent Number 8173, Land Commission Award Number 8559-B, Apana 39 to William C. Lunalilo, and Royal Patent Number 7186, Land Commission Award Number 11065, Apana 1 to Alahipa) situate, lying and being at Kalihiwai, Island and County of Kauai, State of Hawaii, being LOT 8 of the "ANINI VISTA SUBDIVISION", containing an area of 17.232 acres, more or less, and being more particularly described as per survey of Ronald J. Wagner, Land Surveyor, with Wagner Engineering Services, Inc., dated June 2, 1997.

Tax Map Key:  5-3-009-008, CPR 0004

LEGALA        Rev. 05/10/00

)9

EXHIBIT 3

46



## ADJUSTABLE RATE NOTE
### (Construction-To-Permanent Loan)

Loan Number   14-068024-9
Obligor Number  02100 48315

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE MAXIMUM INTEREST RATE I MUST PAY.**

| December 3, 2003 | San Francisco | California |
|---|---|---|
| [Date] | [City] | [State] |

**Lot 8 Kalihiwai Road, D  Kilauea, HI  96754**

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **1,600,000.00** or so much of such sum as has been advanced to me (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **First Republic Bank**.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

The loan will be advanced to me pursuant to a Construction Loan Agreement between the Lender and me (the "Construction Loan Agreement"). The period of time commencing on the date of this Note and ending on the "Completion Date" under the Construction Loan Agreement is referred to herein as the "Construction Period." The first day after the Completion Date is referred to herein as the "Permanent Loan Commencement Date." The period of time commencing on the Permanent Loan Commencement Date and ending on the Maturity Date described below is referred to herein as the "Permanent Loan Period." The Construction Period Rider attached hereto sets forth certain terms applicable to this Note during the Construction Period only. After the Construction Period, that Rider shall no longer apply and this Note may be transferred without that Rider attached hereto. The expiration of the Construction Period may be evidenced by the Note Holder's endorsement of the Permanent Loan Commencement Date hereon, as permitted below. At any time on or after the Permanent Loan Commencement Date, I hereby authorize the Note Holder to endorse upon this Note a certification stating the Completion Date, the Permanent Loan Commencement Date, the Maturity Date, the principal balance of my loan on the Permanent Loan Commencement Date, the interest rate on my loan as of the Permanent Loan Commencement Date (which is subject to adjustment pursuant to Section 4 below), the amount of my monthly payment as of the Permanent Loan Commencement Date (which is subject to adjustment pursuant to Section 4 below), the month in which my monthly payments during the Permanent Loan Period are to commence, and the first "Change Date" referred to in Section 4 after the Permanent Loan Commencement Date. Any subsequent Note Holder shall be entitled to rely on such certification.

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal advanced to me has been paid. The interest rate I will pay during the Permanent Loan Period and thereafter until I pay the loan in full will be at the rate established in, and will change in accordance with, Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay during the Permanent Loan Period both before and after any default described in this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

During the Permanent Loan Period, I will make payments every month.

During the Permanent Loan Period, I will make my monthly payments on the first day of each month beginning one month after the Permanent Loan Commencement Date. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If on **December 1, 2033**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

Adjustable Rate Note
1 Month LIBOR No Interim Caps I/O

Page 1 of 5

N822P1

Rev. 08/02/00

FIDELITY NATIONAL TITLE hereby certifies that this is a true copy of the original.

EXHIBIT 4

47

I will make my monthly payments at **101 Pine Street, San Francisco, CA 94111**
or at a different place if required by the Note Holder.

**(B) Amount of My Monthly Payments**
During the first _____ **10** years of the Permanent Loan Period, the amount of my monthly payment will be calculated on the Permanent Loan Commencement Date and on each Change Date (as defined below) thereafter to equal the amount of interest accrued on the loan during the prior month.

During the remainder of the Permanent Loan Period, the amount of my monthly payment will be calculated on the expiration of the initial _____ **10** year interest only period referred to above and on each Change Date (as defined below) thereafter to equal the amount of the monthly payment that would be sufficient to repay the unpaid principal that I owe at that date in full on the Maturity Date at the interest rate then applicable to this Note in substantially equal payments.

**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect any changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**
The interest rate I will pay may change on the Permanent Loan Commencement Date and the first day of every _____ **1** month thereafter. The Permanent Loan Commencement Date and each other date on which my interest rate could change is called a "Change Date." Notwithstanding anything to the contrary set forth in this Note, the "Current Index" utilized in calculating the interest rate on this Note on the first Change Date during the Permanent Loan Period (i.e., the Permanent Loan Commencement Date) shall be the most recent Index (as defined below) figure available as of the date 15 days before said Change Date.

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of the London Interbank Offered Rate ("Libor") for one-month United States dollar-denominated deposits as published daily in the Wall Street Journal. The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index."

If the Index is no longer available or is otherwise unpublished or in Note Holders sole discretion is determined to be substantially recalculated, the Note Holder will choose a new index. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date the Note Holder will calculate my new interest rate by adding **One and Eight-Tenths** percentage point(s) ( **1.800** %) to the Current Index. The Note Holder will then round the result of this addition to the next highest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment. During the first _____ **10** years of the Permanent Loan Period, the Note Holder will determine the amount of my monthly payment of interest. During the remainder of the loan term when principal and interest payments are required, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date (i.e. the Permanent Loan Commencement Date) is only limited by the life of the loan cap set forth below. During the Permanent Loan Period, my interest rate will never exceed _____**11.950**_____ (the "life of the loan cap").

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any payment change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge, unless a prepayment penalty rider is attached hereto. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates on my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make the refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7.    BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of __**10**__ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __**6.000**__ % of my overdue payment. If however, the Note Holder has not received the full amount of my final payment by the end of __**10**__ calendar days after my Maturity Date, I will pay a late charge of __**6.000**__ % of my overdue payment of the entire principal balance plus any accrued but unpaid interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Adjustable Rate Note
1 Month LIBOR No Interim Caps I/O                    Page 3 of 5                    N822P3          Rev. 08/02/00

EXHIBIT 4

49

 

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is based upon a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest In Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. During the Permanent Loan Period only, Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in this Note and in this Security Instrument. Borrower will continue to be obligated under this Note and this Security Instrument unless Lender releases Borrower in writing.



If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

The financial statement I submitted to First Republic includes all my direct and indirect liabilities and all contingent liabilities as of the funding of this loan.

See Exhibit(s) listed below, attached hereto and by this reference made a part hereof.

Prepayment Penalty Addendum, Automatic Debit Addendum, Direct Deposit Addendum and Construction Period Rider

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED:

Spizzirri Family Trust under unrecorded
Declaration of Trust dated November 11, 1997, with
full power to sell, convey, mortgage, lease, etc.

_____ Trustee _____ (Seal)          _____ Trustee _____ (Seal)
Marc J. Spizzirri, Trustee          Borrower          Candee C. Spizzirri, Trustee          Borrower


_____ _____ (Seal)          _____ _____ (Seal)
Marc J. Spizzirri          Borrower          Candee C. Spizzirri          Borrower


[Sign Original Only]

FIDELITY NATIONAL TITLE
hereby certifies that this
is a true copy of the
original.

Adjustable Rate Note
1 Month LIBOR No Interim Caps I/O                    Page 5 of 5                    N822P5          Rev. 08/02/00

EXHIBIT 4                                                                      51

## ADJUSTABLE  RATE NOTE
## PREPAYMENT PENALTY ADDENDUM

Loan No. **14-068024-9**

THIS ADDENDUM is made this **3rd** day of **December, 2003**, and is incorporated into and shall be deemed to amend and supplement the **ADJUSTABLE** Rate Note of the same date executed by the undersigned ("Borrower"), in favor of **First Republic Bank** (the "Lender"), as follows:

**Section 5. BORROWER'S RIGHT TO REPAY** - The first sentence of paragraph 2 is hereby deleted and replaced with the following language:

I may make a full prepayment or partial prepayments at anytime. If within the first **48** month(s) of this loan I make a prepayment **\***, I will be required to pay a prepayment charge. The prepayment charge will be equal to **One** percent of the principal balance of the loan immediately prior to the prepayment. This prepayment charge will be assessed regardless of whether the prepayments are voluntary or involuntary. After the first **48** month(s) of this loan, I may make a prepayment without any prepayment charge.

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Addendum.

**\* and the total of all prepayments made by me during any twelve (12) month period exceeds twenty percent (20%) of the original principal balance**

Marc J. Spizzirri /Trustee        Date 12/08/03

Candee C. Spizzirri, Trustee        Date 12/08/03

Marc J. Spizzirri        Date 12/08/03

Candee C. Spizzirri        Date 12/08/03

FIDELITY NATIONAL TITLE hereby certifies that this is a true copy of the original.

[Sign Original Only]

PPP1            Rev. 06/06/03

EXHIBIT 4

52



## AUTOMATIC DEBIT ADDENDUM

First Republic Qualifying Account No. __92500014914__                    Loan No. __14-068024-9__

This Automatic Debit Addendum ("Addendum") is made this **3rd** day of **December, 2003** and is incorporated into and shall be deemed to amend and supplement that certain Promissory Note dated **December 3, 2003** as executed by the undersigned ("Borrower") in favor of FIRST REPUBLIC BANK ("the Bank") in connection with the real estate loan ("Loan") described above. The words "I," "me" and "my" mean each Borrower signing below. The use of the singular shall include the plural.

In order to be eligible for a preferred interest rate which may or may not include fee discounts, I agree to establish and maintain a Bank personal checking account and to authorize automatic debits from that account ("Qualifying Account") for the purpose of making my Loan payments on the first business day of each month. I understand that the amount of the automatic payment will change to correspond to changes in the amount of the monthly payments.

This arrangement may be terminated upon the occurrence of any of the following:

    1. There are insufficient collected funds in my Qualifying Account to make the full payment on the due date of any monthly Loan payment. In such event, I may also be subject to possible late charges and other consequences of a late payment as stated in my Loan documents, as well as additional charges in connection with my Qualifying Account.

    2. My Qualifying Account or the automatic payment authorization agreement is canceled by the Bank or me. I understand that the Bank may cancel the Qualifying Account if I fail to follow any of the Bank's rules, regulations or policies applicable to accounts of this type including requirements regarding minimum balance, service charges, overdrafts, insufficient funds, uncollected funds, returned items, limitations on withdrawals, etc.

    3. The sale, assignment or transfer of any of my interest in the property securing the Loan.

Effective on the first day of the month following the occurrence of any of the foregoing events, the Bank may be entitled to increase the annual interest on my Loan by **One-Half** **(0.50** %) of one percentage point. If my loan is an adjustable rate loan, the Bank may also increase the margin on my Loan by **One-Half** **( 0.50** %) of one percentage point. The margin is the number of percentage points the Bank adds to the index rate to calculate the fully-indexed rate. These increases will not be subject to any interest rate limitations stated in my Loan documents except that my interest rate may not exceed the maximum interest rate for the life of my Loan. Except during the interest only payment period, upon any increase in my interest rate, my payments will be increased to an amount sufficient to repay the Loan at the new interest rate over the remaining term of the Loan in substantially equal payments. In the case of an adjustable rate loan, my interest rate and payment will continue to adjust thereafter according to the terms of the note based upon the increased margin.

In its sole discretion, the Bank may decide not to exercise its right to increase the rate and/or margin. In such case, the Bank shall not waive its right to do so upon the occurrence of a future event.

Except as expressly stated in this Agreement, all other terms of my Loan documents shall remain in full force and effect

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED:


_____ _Trustee_ **(Seal)**        ✓_Candee C. Spizzirri_ _Trustee_**(Seal)**
**Marc J. Spizzirri, Trustee**        Borrower        **Candee C. Spizzirri, Trustee**        Borrower


_____ **(Seal)**        _Candee C. Spizzirri_ **(Seal)**
**Marc J. Spizzirri**        Borrower        **Candee C. Spizzirri**        Borrower

FIDELITY NATIONAL TITLE   **[Sign Original Only]**
hereby certifies that this
is a true copy of the
101 Pine Street, San Francisco, CA 94111

AUTOMATIC DEBIT NOTE RIDER                    AUTODBTA      Rev. 03/19/01

EXHIBIT 4                                                                                  53

## DIRECT DEPOSIT ADDENDUM

First Republic Qualifying Account_____**92500014914**_____ Loan No. **14-068024-9**

This Direct Deposit Addendum ("Addendum") is made this **3rd**_____ day of **December, 2003**_____,
and is incorporated into and shall be deemed to amend and supplement that certain Promissory Note dated
**December 3, 2003**_____, as executed by the undersigned ("Borrower") in favor of FIRST REPUBLIC BANK
("the Bank") in connection with the real estate loan ("Loan") described above. The words "I," "me" and "my" mean each Borrower
signing below. The use of the singular shall include the plural.

In order to be eligible for a preferred interest rate which may or may not include fee discounts, I agree to establish and maintain a
Bank personal checking account and to authorize direct deposit of my primary income source into that account ("Qualifying
Account").

This arrangement may be terminated upon the occurrence of any of the following:

1. My Qualifying Account is canceled by the Bank or me. I understand that the Bank may cancel the Qualifying Account if
I fail to follow any of the Bank's rules, regulations or policies applicable to accounts of this type including requirements
regarding minimum balance, service charges, overdrafts, insufficient funds, uncollected funds, returned items, limitations
on withdrawals, etc.

2. I no longer directly deposit my primary income source into my Qualifying Account.

3. The sale, assignment or transfer of any of my interest in the property securing the Loan.

Effective on the first day of the month following the occurrence of any of the foregoing events, the Bank will be entitled to increase
the annual interest on my Loan by **One-Tenth**_____ ( **0.10** %)
of one percentage point. If my loan is an adjustable rate loan, the Bank may also increase the margin on my Loan by
**One-Tenth**_____ ( **0.10** %) of one percentage point.
The margin is the number of percentage points the Bank adds to the index rate to calculate the fully-indexed rate. These increases
will not be subject to any interest rate limitations stated in my Loan documents except that my interest rate may not exceed the
maximum interest rate for the life of my Loan. Except during the interest only payment period, upon any increase in my interest
rate, my payments will be increased to an amount sufficient to repay the Loan at the new interest rate over the remaining term of the
Loan in substantially equal payments. In the case of an adjustable rate loan, my interest rate and payment will continue to adjust
thereafter according to the terms of the note based upon the increased margin.

In its sole discretion, the Bank may decide to exercise its right to increase the rate and/or margin. In such case, the Bank shall not
waive its right to do so upon the occurrence of a future event.

Except as expressly stated in this Agreement, all other terms of my Loan documents shall remain in full force and effect.

| | |
|---|---|
| _Marc J. Spizzirri_ Trustee 12/18/03 | _Candee C. Spizzirri_ Trustee 12/18/03 |
| **Marc J. Spizzirri**, Trustee    Date | **Candee C. Spizzirri**, Trustee    Date |
| _Marc J. Spizzirri_  12/18/03 | _Candee C. Spizzirri_  12/18/03 |
| **Marc J. Spizzirri**    Date | **Candee C. Spizzirri**    Date |

FIDELITY NATIONAL TIT...
hereby certifies that this
is a true copy of the
original.

**[Sign Original Only]**
DIRDPR      Rev. 03/19/01

EXHIBIT 4                                                              54

**FIRST REPUBLIC BANK**
## CONSTRUCTION PERIOD RIDER TO ADJUSTABLE RATE NOTE
### (Construction-To-Permanent Loan)

Loan No. **14-068024-9**

THIS CONSTRUCTION PERIOD RIDER ("Rider") is dated **December 3, 2003**, and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (Construction-To-Permanent Loan) (the "Note"), dated as of **December 3, 2003**, given by the undersigned in favor of **First Republic Bank**, the Lender named therein. All capitalized terms used but not defined herein shall have the meanings set forth in the Note.

This Rider shall apply only during the Construction Period and shall no longer apply on or after the Permanent Loan Commencement Date.

The undersigned hereby agrees as follows:

### 1. THE CONSTRUCTION LOAN AGREEMENT
The Construction Loan Agreement sets forth certain of my obligations and certain defaults which will entitle the Note Holder to require me to make immediate payment in full of the loan.

### 2. LENGTH OF CONSTRUCTION PERIOD
In no event shall the Construction Period exceed **24** months from the date hereof; if it does, I will be in default under the Note unless excused by the Note Holder or extended pursuant to the Construction Loan Agreement.

### 3. INTEREST
During the Construction Period, I will pay interest at a yearly rate of **4.2500** %. The interest rate I will pay will change in accordance with Section 5 of this Rider.

The interest rate required by this Section 3 and Section 5 below is the rate I will pay during the Construction Period both before and after any default described in the Note, except as set forth in the Construction Loan Agreement with respect to the interest chargeable after certain defaults during the Construction Period.

### 4. PAYMENTS

#### (A) Time of Payments
I will pay interest payments every month during the Construction Period and on the fifteenth day of the month after the termination thereof, in an amount equal to the interest which has accrued on the unpaid principal during the prior month. I will make my monthly payments on the fifteenth day of each month beginning on the fifteenth day of the first month following the initial disbursement under the Construction Loan Agreement. My monthly payments will be applied to interest before principal.

#### (B) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the principal amounts advanced during the Construction Period and in the interest rate that I must pay. The Note Holder will determine the changed amount of my monthly payment in accordance with the Construction Loan Agreement and Section 5 of this Rider.

### 5. INTEREST RATE AND MONTHLY PAYMENT CHANGES

#### (A) Change Dates
The interest rate I will pay may change on the first day of **February 2004**, and on that day every month thereafter during the Construction Period. Each date on which my interest rate could change is called a "Change Date."

#### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is **Bank of America's** Reference Rate (PRIME) as made available by **Bank of America's** main office in **Charlotte, NC.** The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index."

If the Index is no longer available or is otherwise unpublished or in Note Holder's sole discretion is determined to be substantially recalculated, the Note Holder will choose a new Index. The Note Holder will give me notice of this choice.

Page 1 of 2                                R910P1                    Rev. 10/04/00

EXHIBIT 4                                                                      55

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **One-Quarter** percentage points ( **0.2500** %) to the Current Index. If the result of this addition is not in an increment of one-eighth of one percentage point (0.125%) then the Note Holder will round the result of this addition to the next highest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 5(D) below, this rounded amount will be my new interest rate until the next Change Date.

**(D) Limits on Interest Rate Changes**

My new interest rate will never increase to more than **18.0000** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any payment change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question that I may have regarding this notice.

**6. LATE CHARGES**

If the Note Holder has not received the full amount of any monthly payment by the end of **10** calendar days after the date it is due, during the Construction Period, I will pay a late charge to the Note Holder. The amount of the charge will be **6.000** % of my overdue payment. I will pay this late charge promptly but only once in each late payment.

**7. OTHER NOTE PROVISIONS APPLY**

Except as expressly set forth in this Rider, all other terms and provisions of the Note shall apply during the Construction Period.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

Marc J. Spizzirri, Trustee                   Date               Candee C. Spizzirri, Trustee              Date

Marc J. Spizzirri                            Date               Candee C. Spizzirri                       Date

**[Sign Original Only]**

FIDELITY NATIONAL TITLE
hereby certifies that this
is a true copy of the
original.

Page 2 of 2                        R910P2              Rev. 10/04/00

EXHIBIT 4

56

```
ML 540  22-068024-9  SPIZZIRRI   MAR PAYOFF INQUIRY        CTDATE 06-04-13
  RATE  TERM VAR-DATE  PRINCIPAL-BAL  ESCROW-BAL    OPT-BAL   UNPAID-LATE-CHG
 6.250  0318 02-01-13   2000,000.00   66,165.60-        .00       7,416.67-
 INT.EARNED     INT.RECEIVED   CURR.PERIODS    INTEREST        PER DIEM
NOT RECEIVED    NOT EARNED     INT.EARNED     PPD/DUE(-)
  41,666.68          .00       10,416.67     52,083.35-       347.2222
  FEES-DUE   STOP CODES    SPEC      2ND-LIEN#        PLEDGED-SAV#  PLAN  AML
       .00  78  11  02     04                                      094   Y
 PAYOFF CODE  PREPAY PENALTY FEE  ADV/ARR  INV.#  SUSPENSE-BAL  CALC-IOE-ACCR
    00           .00          1    000          .00            .00
   PRIN-VAR      INT-VAR       ESC-VAR     OPT-VAR    IOE-W/H   LOSS DRAFT
      .00          .00           .00         .00         .00          .00
DUE DATE      PAYOFF DATE  P/M   ORIG. AMT.   SUBSIDY-BAL  MORTGAGOR-BAL
02-01-13      05-30-13      1    2,000,000
                                         CURTAILMENT INT          .00
PRINCIPAL BALANCE     2000,000.00    PLUS PREPAY PENALTY        .00
LESS ESCROW BALANCE     66,165.60-   PLUS LATE CHARGE      7,416.67
LESS OPT BALANCE             .00     PLUS INTEREST PPD/DUE 52,083.35 *
LESS SUSPENSE BAL            .00     PLUS FEES                  .00

NET PRINCIPAL DUE     2066,165.60    **TOTAL PAYOFF AMOUNT   2125,665.62
COMMAND: [    ]  ACCT: 220680249            PLUS: [
```

Submit  Cancel
06-04-2013  10:29:54

EXHIBIT 5                                              57

1    Ronald R. Cohn (CA Bar No. 60836)
     Horgan, Rosen, Beckham & Coren, LLP
2    *Email: rcohn@horganrosen.com*
     23975 Park Sorrento, Suite 200
3    Calabasas, California  91302
     Voice: 818.591.2121
4    Fax: 818.591.3838

5    Attorneys for Movant, First Republic Bank

6

7

8                    UNITED STATES BANKRUPTCY COURT

9          CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10

11

12   In re                                    Case No.: 8:13-bk-14702-MW

13   MARC JOSEPH SPIZZIRRI,                    Chapter 11

                      Debtors.                 DECLARATION OF MEL ARANOFF IN
14                                             SUPPORT OF MOTION FOR RELIEF FROM
                                               STAY
15
                                               DATE : November 25, 2013
16                                             TIME  : 9:00 a.m.
                                               CTRM: 6C
17

18

19                    **DECLARATION OF MEL ARANOFF**

20   I, Mel Aranoff, do hereby declare:

21           I, MEL ARANOFF, declare and state as follows:

22

23           1.   I am an attorney duly licensed to practice law in all the Courts in the State of

24   California. I am a partner in the law offices of Horgan, Rosen, Beckham & Coren, LLP (the

25   "Firm"), attorneys of record for Secured Creditor First Republic Bank ("Bank").  If called upon, I

26   can and will competently testify to the following facts from my own personal knowledge.  This

27   declaration is made in support of Bank's motions for relief from stay.

28

                                                                                                    1

1    2.    I have personal knowledge of all facts contained in this declaration.    All the

2   information set forth is based upon my recollection and based on notes and computer information

3   that I caused to be generated in the regular course of business relating to this case and which are

4   kept in this case file.

5    3.   I am the attorney at the Firm in charge of the instant case and am knowledgeable as

6   to all material events pertaining thereto.

7

8    4.    I personally appeared at the Debtor's First Meeting of Creditors which was

9   conducted on July 9, 2013, when the Debtor appeared and responded to questions put to him by

10   the representative of the Office of the U.S. Trustee and by representatives of creditors. I also asked

11   questions on behalf of First Republic Bank.

12    5.    I asked the Debtor at the First Meeting of Creditors as to whether he was paying

13   for the maintenance of the Hawaii property which is the subject of this Motion for Relief from

14   Stay, and he responded that he was not doing so.

15   

16    6.    The Debtor testified at the First Meeting of Creditors that he had earlier arranged

17   for a potential purchaser of the Hawaii property to pay for the maintenance of that property, but

18   that such person was no longer doing so.

19    I declare under penalty of perjury under the laws of the United States of America that

20   the foregoing is true and correct to the best of my knowledge and belief.

21   

22    Executed this 31st day of October, 2013 at Los Angeles, California.

23   

24   _____

    Mel Aranoff

25

26

27

28